UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA-AMERICAN WATER COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TOWN OF MOORESVILLE, and THE MOOREVILLE TOWN COUNCIL GEORGE WATKINS, in his individual and Official capacities, JEFFREY M. COOK, in his individual and official capacities, ANTHONY LANGLEY, in his individual and official capacities, VIRGINIA PERRY, in her individual and official capacities, MARK MATHIS, in his individual and official capacities, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:12-cv-1493-TWP-DML |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

The Defendants, the Town of Mooresville, the Town of Mooresville Town Council, George Watkins, Jeffrey M. Cook, Anthony Langley, Virginia Perry, and Mark Mathis (collectively, "Mooresville"), by counsel, pursuant to Local Rule 7.1, respectfully submit their Memorandum of Law in Support of their Motion for Partial Judgment on the Pleadings.

As is more fully set forth below, the Court should enter judgment in Mooresville's favor on **Counts I, II**, and **III** in their entirety as a matter of law. The Court should also deny the request for attorneys' fees and civil penalties in **Count IV** as a matter of law. Finally, the individual members of the Mooresville Town Council – George Watkins, Jeffrey M. Cook, Anthony Langley, Virginia Perry, and Mark Mathis – are immune from suit in their individual capacities and should be dismissed from the case.

# BACKGROUND

Indiana-American Water Company, Inc. ("IAWC") has legally "consented" to the acquisition of its local water utility by Mooresville.  E.g., Ind. Code § 8-1-2-93.  Although IAWC was required to grant that consent in order to accept its "indeterminate permit" and operate a water utility in Mooresville, IAWC now does not want to consent.  It has instead filed this premature lawsuit to frustrate Mooresville's path towards acquiring IAWC's facilities under Indiana eminent domain law.  It cannot do so.

Mooresville has not yet "taken" or otherwise "seized" IAWC's local utility – as Mooresville is ultimately entitled to do – and IAWC's effort to avoid the eventual "process" it is due if or when Mooresville files a condemnation lawsuit, so as to avoid having to "consent," is without merit.

## I.   LEGAL CONTEXT

Underlying IAWC's lawsuit – and particularly Count I, II, and III – is the law in Indiana regarding Mooresville's authority for purchasing "IAWC's Mooresville Operations" and the actual methods for doing so.

### A. FOR-PROFIT UTILITIES CONSENT TO MUNICIPAL ACQUISITION UNDER TWO ALTERNATIVE PROCESSES

IAWC operates a for-profit water utility serving the public in and around Mooresville under an "indeterminate permit."  (Complaint ¶¶1, 11); Ind. Code § 8-1-2-92.  In order to accept the right to provide water service in Mooresville, IAWC was explicitly required to consent to the future purchase or acquisition of its local utility by Mooresville and waive all other rights relative to condemnation.  Specifically:

> Any public utility accepting or operating under any indeterminate license, permit, or franchise granted after April 30, 1913, shall by acceptance of any such indeterminate license, permit, or franchise **be deemed to have __consented__ to a**

**future purchase or condemnation** of its property including property located in contiguous territory within six (6) miles of the corporate limits of such municipality by the municipality in which such utility is located, **at the value and under the terms and conditions as provided in IC 8-1.5-2,** IC 36-9-23, or IC 36-9-25, as applicable, and shall thereby be deemed to have waived the right of requiring the necessity of such taking to be established by the judgment of a court, **and to have <u>waived</u> all other remedies and rights relative to condemnation, except such rights and remedies as are provided in IC 8-1.5-2,** IC 36-9-23, or IC 36-9-25, as applicable, and shall have been deemed to have consented to the revocation of its license, permit, or franchise by the commission for cause.

Ind. Code § 8-1-2-93 (emphasis added).  The Indiana Supreme Court recently re-confirmed the dictates of Ind. Code § 8-1-2-92 & 93, squarely holding that the City of Fort Wayne could acquire a water utility there.  <u>Utility Center, Inc. v. City of Fort Wayne</u>, 868 N.E.2d 453, 461 (Ind. 2007).

Under Ind. Code § 8-1.5-2-15, a municipality has "two alternative methods for condemning a utility outright or acquiring utility property."  <u>Id.</u>  That section states:

(a) If the municipality and the owners of a public utility are unable to agree upon a price to be paid for the property of the public utility, the municipality may:

(1) by ordinance declare that a public necessity exists for the condemnation of the utility property; and

(2) bring an action in the circuit or superior court of the county where the municipality is located against the utility for the condemnation of the property.

(b) An ordinance adopted under subsection (a) is final.

(c) For the purpose of acquiring the property of a public utility, the municipality:

(1) may exercise the power of eminent domain in accordance with IC 32-24; and

(2) is required only to establish the necessity of taking as this chapter requires.

Ind. Code § 8-1.5-2-15.  In Utility Center, the Indiana Supreme Court explained that Ind. Code § 8-1.5-2-15(a) ("Subsection 15(a)") and Ind. Code § 8-1.5-2-15(c) ("Subsection 15(c)") are independent "alternatives."  868 N.E.2d at 461.  "Method one" – under Subsection 15(a) – "provides that the municipal legislative body may, after it passes an ordinance declaring the existence of a public necessity, petition the circuit or superior court to condemn the property."  Id. (citing Subsection 15(a)).  "Method two provides that the municipal legislative body, to determine compensation, may proceed under Ind. Code § 32-24, the general eminent domain statute."  Id. (citing Subsection 15(c)).

Nothing requires notice or a public hearing for either alternative,[1] and the subject utility – such as IAWC – "does not have the authority to designate a particular condemnation procedure."  Id.

### B. THE STATUTORY RIGHT TO EXAMINE PROPERTY TO BE ACQUIRED PRE-CONDEMNATION

Under "method two" for a municipality to exercise its right to acquire an existing utility, Utility Center, 868 N.E.2d at 461, the municipality "may exercise the power of eminent domain in accordance with IC 32-24."  Ind. Code § 8-1.5-2-15(c).  That statute – IC 32-24 – contains Indiana's general eminent domain procedures.  Those provisions generally require that a condemning entity "must make an effort to purchase" the interests sought "before proceeding to condemn," including "establishing a proposed purchase price for the property" and "providing the owner of the property with an appraisal or other evidence used to establish the proposed purchase price."  Ind. Code § 32-24-1-3(b), -3(c).

---

[1] At the time of Utility Center and under its holding, Ind. Code § 8-1.5-2-16 required a referendum process to acquire property under "method one" but not "method two."  868 N.E.2d at 460-61.  The Indiana General Assembly repealed Ind. Code § 8-1.5-2-16 following Utility Center, Ind. Public Law 172-2009, Sec. 8, eliminating the referendum requirement for "method one" under Subsection 15(a).  Therefore, no referendum is required for either method now.

In doing so, the condemning authority may, before proceeding to condemn, "enter upon any land" to "examine and survey" the "property sought to be acquired." Ind. Code § 32-24-1-3(b)(1). When a public utility seeks to acquire property, it may also "enter upon the land" to examine or survey the "property sought to be acquired," but it must either *(a)* send notice by certified mail, fourteen (14) days in advance to the affected landowner, of the utility's intention to enter upon the landowner's property, or *(b)* receive the landowner's signed consent to enter the property to perform the proposed examination or survey. Ind. Code § 32-24-1-3(g).

After the condemning authority makes an offer to purchase the property, it must wait thirty (30) days and, if the offer is not accepted, it may then file a condemnation lawsuit. Ind. Code § 32-24-1-5(a).

It is in this legal context that IAWC has filed its lawsuit against Mooresville.

## II. Relevant Allegations[2]

### A. *The Mooresville Public Hearing and Ordinance 12-2012*

Notwithstanding the lack of any public hearing requirement under Ind. Code § 8-1.5-2-15, on or about July 23, 2012, Mooresville provided notice that it nevertheless intended to "hold a public hearing" and "receive public comment" regarding the potential "construction or acquisition of utility assets and facilities." (Complaint ¶¶13, 15). The notice also stated that the hearing would be held during the August 7, 2012 meeting of the Mooresville Town Council. (Complaint ¶15). IAWC received the notice, (Complaint ¶17), and the "Town Council met as planned on August 7, 2012," (Complaint ¶36), and "allowed a period of time for public

---

[2] The relevant allegations are taken from the Complaint. To be clear, Mooresville disputes many of the allegations in IAWC's Complaint. However, for purposes of Mooresville's Motion, the "plausible" allegations that are not merely legal conclusions "couched as a factual allegation" are accepted as true, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-80 (2009), even though they ultimately would prove to be untrue.

comments." (Complaint ¶38).   IAWC in fact attended the meeting and made a presentation during the noticed public hearing.   (Complaint ¶42).   No ordinance on the IAWC issue was brought before the Town Council at the August 7 meeting.   (Complaint ¶43).

After holding the public hearing meeting and having an opportunity to consider the presentations and comments there, Mooresville held an additional meeting on August 10, 2012, (Complaint ¶64), where the Town Council introduced and unanimously adopted Ordinance 12-2012: *An Ordinance of the Town Council of the Town of Mooresville, Indiana, Declaring that a Public Convenience and Necessity Require the Town of Mooresville to Expand its Municipally Owned Utility and Thereafter Acquire Utility Property* ("Ordinance").   (Complaint ¶¶65, 66, Ex. D).   The Ordinance explained in plain terms Mooresville's intent to (*a*) acquire an existing water utility and (*b*) provide an opportunity for comment by the utility and public where none was otherwise required.   The Ordinance provides in part:

> WHEREAS, the Council deems it desirable and in the best interest of the Town to **exercise its legal authority to acquire, and thereafter own and operate existing water facilities** for the purpose of providing water service within the Town's municipal limits and its extraterritorial authority; and
> …
> WHEREAS, **the Council is <u>not</u> required to hold a public hearing** for the acquisition of existing utility facilities, **but in an effort to receive input** from the public and any affected public utility, the Town has provided notice of and held a hearing at which each public utility furnishing water service in and around the Town was given an opportunity to be heard in person or by counsel on the proposed action; and
>
> WHEREAS, **the utility was given <u>additional</u> procedure by appearing and being heard** in person and by counsel at said hearing; and
>
> WHEREAS, under Indiana law, any public utility operating within the Town is **deemed to have <u>consented</u> to the future acquisition** of its property including its property located within the Town's extraterritorial authority.

(Complaint Ex. D pp.1-2) (emphasis added).   The Ordinance then confirmed that the Town was "exercise[ing] its power to acquire and thereafter own, operate, and control existing water assets

and facilities for the purpose of providing water service both inside and outside the Town's municipal limits." (Complaint Ex. D p.2).

### B. Mooresville's Notice of Intent to Preliminarily Examine IAWC's Property Under Indiana's Eminent Domain Statute

Two weeks after adopting the Ordinance, on September 24, 2012, Mooresville's counsel sent IAWC a notice seeking to examine IAWC property under Ind. Code § 32-24. (Complaint ¶75). The notice explained that Mooresville was "considering whether to exercise its statutory right to purchase" IAWC's Mooresville water utility, that Ind. Code § 32-24-1-3 allows the Town to enter upon IAWC's property "to examine and survey the property sought to be acquired," that Mooresville's attorneys had sought consent from IAWC's attorneys but had "not received a definitive response," and was therefore providing notice that "representatives of the Town, its appraisers, and engineers intend to enter upon Indiana American's property on October 8, 2012 beginning at 9:00 a.m." (Complaint ¶75, Ex. E). "To minimize the inconvenience to [IAWC's] business," Mooresville also requested that contracts, titles, reports, logs, permits, etc., which the Town sought to acquire as a part of the utility, "be made available for examination." (Complaint ¶75, Ex. E).

### C. IAWC Files its Lawsuit

Before Mooresville could visit IAWC's property on October 8th, and before the filing of any action by Mooresville to acquire IAWC's local utility under either "method one" (Ind. Code § 8-1.5-2-15(a)) or "method two" (Ind. Code § 8-1.5-2-15(c)), IAWC filed this lawsuit on October 4, 2012. The lawsuit seeks a finding that Mooresville has already taken IAWC's "property interest in the IAWC Mooresville Operation" without providing due process, (**Count I**), that IAWC did not receive "proper notice" of the August 7 hearing, (**Count II**), and that Mooresville's "attempt" to visit IAWC's property is an unlawful search and seizure. (**Count**

**III**).   In addition, IAWC seeks declaratory relief as well as attorneys' fees and penalties for alleged violations of Indiana's Access to Public Records Act.   (**Count IV**).   IAWC has also named the Mooresville Town Council members in their individual capacities.   (Complaint ¶¶4-8).

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to request judgment following the filing of the complaint and answer.  Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co., 521 F.3d 743, 746 (7th Cir. 2008). If a defendant raises a Rule 12(b) defense in a Rule 12(c) motion, a Rule 12(b)(6)-type analysis applies. Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 619 (7th Cir. 2007); see also Midwest Gas Servs. v. Ind. Gas Co., 317 F.3d 703, 709 (7th Cir.), reh'g denied, cert. denied, 540 U.S. 817 (2003). Since the Defendants here raise 12(b)(6) defenses in a Rule 12(c) motion, the 12(b)(6) standard is appropriate.

Rule 8(a) of the Federal Rules of Civil Procedure requires any pleading stating a claim for relief to include, in part, "a short plain statement of the claim showing that the pleader is entitled to relief." "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Rule 8(a)(2) requires that "[f]actual allegations must be enough to raise a [plaintiff's] rights to relief above the speculative level." Id.   Twombly "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." Bissessur v. Indiana University Bd. of Trustees, 581 F.3d 599, 603 (7th Cir. 2009).

Under Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the first step is to identify those factual allegations in the complaint entitled to the assumption of truthfulness. Iqbal, 556 U.S. at 678-79. While the Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor," Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008), legal conclusions, including those "couched as a factual allegation," are not accepted as true. Iqbal, 556 U.S at 678-80.

The second step is to review those factual allegations properly taken as true to determine if they plausibly suggest an entitlement to relief. Id. at 681. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. at 678 (quoting Twombly, 550 U.S. at 557). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.

## ARGUMENT

I.  **COUNT I – IAWC HAS FAILED TO EXHAUST ITS STATE REMEDY OF INVERSE CONDEMNATION, AND HAS NO PROPERTY INTEREST IN PROVIDING SERVICE IN ANY EVENT.**

IAWC cannot file a premature due process claim to stop Mooresville from considering and/or acquiring IAWC's utility through eminent domain. As is outlined above, there are processes in Indiana under which IAWC has consented to be acquired. Ind. Code § 8-1-2-93; Utility Center, 868 N.E.2d at 461. IAWC does not want to consent, so it has filed a premature due process claim so as to avoid consenting when it ultimately receives whatever process it is due. The Constitution does not provide a sword for IAWC to use to avoid being acquired.

IAWC alleges in Count I that Mooresville has denied it "due process" prior to "depriving [it] of a property interest," (Complaint ¶84); namely, "a property interest in the IAWC Mooresville Operation and the service territory." (Complaint ¶85). IAWC's "taking" and "due process" claim fails as a matter of law for two reasons: *(i)* IAWC has not exhausted its state remedy of inverse condemnation and its claim is not ripe, <u>Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 194 (1985), and, even then, *(ii)* IAWC has no protectable property interest in its indeterminate permit to provide water service in the Mooresville area. <u>Hendricks County REMC v. Public Service Company of Indiana, Inc.</u>, 276 N.E.2d 852, 854 (Ind. Ct. App. 1972).

### A. IAWC was Required to First Seek Relief Through Inverse Condemnation

IAWC cannot bring its due process claim for an alleged taking of its "service territory" without first exhausting a state claim seeking just compensation. In <u>Williamson County</u>, the Supreme Court held that a constitutional takings claim is not ripe unless the plaintiff has first sought compensation through state procedures. 473 U.S. at 194. As the Court explained:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation…. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exists at the time of the taking…. Similarly, if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation.

<u>Id.</u> at 194-95. Because the <u>Williamson County</u> property owner had an available procedure in Tennessee though inverse condemnation that had not been exhausted, the Court found the claim was premature. <u>Id.</u> at 196-97.

Assuming a "taking" even occurred, IAWC similarly has an available state law remedy in Indiana for inverse condemnation under Ind. Code § 32-24-1-16. IAWC therefore cannot sustain

-10-

its claim unless it has first unsuccessfully sought compensation through that procedure.  E.g.,
SBG Financial Services, Inc. v. Consolidated City of Indianapolis-Marion County, 235 F.3d
1036 (7th Cir. 2000) (recognizing Indiana inverse condemnation process as precluding suit under
42 U.S.C. § 1983).  Nor can IAWC avoid the exhaustion requirement by labeling its claim here
as a "due process" violation: "The exhaustion requirement of Williamson County applies
whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process
violation.  That plaintiffs have sued for 'inverse condemnation' with a reference to due process,
whether substantive or procedural, therefore does not alter our analysis."  Hager v. City of West
Peoria, 84 F.3d 865, 869 (7th Cir. 1996) (internal citations omitted).

The concept recognized in Williamson County that the State's action "is not 'complete'
until the State fails to provide adequate compensation for the taking," 473 U.S. at 195, is
unmistakable here.  As is outlined above, either of the two methods for Mooresville to condemn
IAWC's utility requires Mooresville to file a lawsuit with a state court.  Method one requires
Mooresville to "bring an action in the circuit or superior court of the county where the
municipality is located against the utility for the condemnation of the property," Ind. Code § 8-
1.5-2-15(a)(2), and method two would require Mooresville to "exercise the power of eminent
domain in accordance with IC 32-24," Ind. Code § 8-1.5-2-15(c)(1), which would also require
Mooresville to file a complaint with a state court.  Ind. Code § 32-24-1-4.  In either case then,
IAWC would receive a "fair hearing in front of an impartial decisionmaker."  (Complaint ¶93).
Mooresville simply has not reached either point yet.

"All that is essential is that in some appropriate way, before some properly constituted
tribunal, inquiry shall be made as to the amount of compensation, and, when this has been
provided, there is that due process of law which is required by the Federal Constitution."

Gramlich v. Joint County Park Board, 191 F.2d 792, 795-96 (7th Cir. 1951) (quoting Backus v. Fort Street Union Depot Co., 169 U.S. 557, 569 (1898)).   IAWC cannot frustrate Mooresville from moving forward with acquiring its utility by raising a due process claim before Mooresville has an opportunity to file a lawsuit to provide IAWC with the due process and just compensation to which it is entitled.   "Section 1983 does not empower a federal court to enjoin a state from initiating statutory condemnation proceedings," City of Oak Creek v. Milwaukee Metropolitan Sewerage Dist., 576 F.Supp. 482, 487 (E.D. Wisc. 1983), and IAWC's effort to *avoid* due process must fail.[3]

### B.  IAWC Does Not Have a Property Interest in Any Service Territory

Even assuming IAWC had first exhausted a state inverse condemnation claim, IAWC does not have "a property interest in the IAWC Mooresville Operation and the service territory served by the IAWC Mooresville Operation."  (Complaint ¶85).  An essential component of any due process claim – both procedural and substantive – "is a protected property or liberty interest."  Khan v. Bland, 630 F.3d 519, 527, 535 (7th Cir. 2010).  "To claim a property interest protected by the Fourteenth Amendment, 'a person … must have more than a unilateral expectation of [the claimed interest].  He must, instead, have a legitimate claim of entitlement to it.'"  Id. at 527 (quoting Bd. of Regent of State Colls. V. Roth, 408 U.S. 564, 577 (1972)).

IAWC has no "claim of entitlement" under Indiana law to its "service territory," let alone a "fundamental right" that is "deeply rooted in this Nation's history and tradition" required for a substantive due process claim.  Id. at 535 (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)).  IAWC *itself* very well knows that it does not have an "exclusive water

---

[3] There is a reason IAWC has not filed an inverse condemnation suit.  An inverse condemnation suit would not stop Mooresville from acquiring IAWC's utility, but would only provide IAWC with compensation for Mooresville's acquisition.  In other words, it would defeat IAWC's effort to stop an acquisition altogether.

territory," and the area would always be "free and open to competition" by other water utilities if Mooresville were not to acquire IAWC's facilities.  See In re Amended Complaint and Petition of Indiana-American Water Co., Inc. to Determine a Territorial Dispute Between Water Utilities, IURC Cause No. 43133, 2007 Ind. PUC LEXIS 349, *49 (Dec. 5, 2007) (accepting *IAWC's argument* that water territory was free and open to competition); aff'd on appeal in Town of Chandler v. Indiana-American Water Co., 892 N.E.2d 1264 (Ind. Ct. App. 2008).  It is disingenuous for IAWC to now suggest that it has a protected interest in serving a territory when it has itself previously argued to its regulatory body, the Indiana Utility Regulatory Commission ("IURC"), that the areas it serves are free and open to competition.  Indeed, as IAWC has done in the past, id., if IAWC believes it has a territory dispute over providing water service with another utility, its remedy is before the IURC.  Ind. Code § 8-1-2-86.5 (providing IURC with jurisdiction over territorial disputes between water utilities).

Nevertheless, it is also well settled in Indiana that IAWC has not only "consented to a future purchase or condemnation" of its utility by Mooresville, and "waived all other remedies and rights relative to condemnation," Ind. Code § 8-1-2-93; Utility Center, 868 N.E.2d at 461 ("A utility like Utility Center holds an indeterminate permit subject to the authority of a municipality like the City to purchase the property."), but IAWC has no property interest in its "indeterminate permit."  Indiana courts have continually held that utilities do not have a protected property interest in a franchise or indeterminate permit.  See, e.g., Hendricks County REMC v. Public Service Co. of Indiana, Inc., 276 N.E.2d 852, 856 (Ind. Ct. App. 1972) (holding right to serve territory under an indeterminate permit is not compensable property right); Public Service Co. of Indiana, Inc. v. Morgan County REMC, 360 N.E.2d 1022, (Ind. Ct. App. 1977) ("The value of a lost franchise or right to service an area is clearly not compensable because of

the indeterminate nature of the permit held by REMC."); see also Central Illinois Public Service Co. v. City of Bushnell, Ill., 109 F.2d 26, 29 (7th Cir. 1940) ("However, a non-exclusive franchise to operate as a public utility, standing alone, does not create a right to be free of competition, and subsequent competition from private or municipal corporations does not violation the due process clause of the federal constitution."). Therefore, IAWC does not have a property interest at stake until Mooresville acquires IAWC's physical utility. IAWC's complaint is premature and invalid.

II.   COUNT II – IND. CODE § 8-1.5-2-10 IS INAPPLICABLE, AND IAWC RECEIVED EXTRA NOTICE AND PROCESS AT A PUBLIC HEARING THAT IAWC ADMITTEDLY ATTENDED AND PARTICIPATED IN.

IAWC asks the Court to invalidate Mooresville Ordinance 12-2012 under Count II for allegedly failing to give notice under Ind. Code § 8-1.5-2-10 ("Section 10"). More specifically, IAWC's claims that Mooresville's notice of its August 7, 2012 public hearing "does not state the time and place where the hearing will be held," (Complaint ¶102), as IAWC claims was required in this case by Ind. Code § 8-1.5-2-10. (Complaint ¶104). However, Ind. Code § 8-1.5-2-15 ("Section 15") – which sets forth the two alternatives for a municipality to acquire an existing utility – does **not** require any public hearing, and the public hearing referenced in Section 10 is not required for Mooresville to acquire IAWC. Montgomery Light & Power Co. v. Town of Linden, 29 N.E.2d 209, 212-13 (Ind. 1940). Yet even though none was required, Mooresville still provided a notice to IAWC and permitted it to be heard at a council meeting. In the end, IAWC not only received adequate notice, but it received an extra opportunity to be heard. It is not a violation of any statute to give IAWC an extra hearing.

### A. Section 10 Does Not Apply If Mooresville <u>Acquires</u> IAWC, But Only If Mooresville Were to <u>Compete</u> With IAWC

The statute that IAWC relies upon – Section 10 – only applies if Mooresville wants to own and operate a water utility <u>in competition</u> with IAWC in Mooresville.  The statute states that:

> Before a municipal legislative body adopts an ordinance declaring that public convenience and necessity require the construction or acquisition of a utility **as provided by section 7 of this chapter**, each public utility furnishing a similar utility service in the municipality, or in the contiguous territory in which the municipality proposes to operate, shall be given ten (10) days notice by the legislative body of the time and place where the hearing will be held. At the hearing, the public utility is entitled to be heard in person or by counsel in opposition to the proposed action.

Ind. Code § 8-1.5-2-10(a) (emphasis added).  "Section 7" of the chapter, in turn, provides that:

> A municipality that **wants to own and operate a utility where there is a public utility <u>engaged in a similar service</u>**:
>
> > (1) under a franchise granted by the municipality; or
> >
> > (2) under an indeterminate permit as defined in IC 8-1-2-1;
>
> may, **after a hearing as provided by section 10** of this chapter, declare by ordinance that public convenience and necessity require the establishment of a municipally owned utility.

Ind. Code § 8-1.5-2-7(b) (emphasis added).   In other words, Section 10's public hearing requirement only applies if Mooresville wants to compete with IAWC so that both engage in providing water service in Mooresville.  It is Section 15, on the other hand, that "details two alternative methods for condemning a utility outright," <u>Utility Center</u>, 868 N.E.2d at 461, as is the case here.  Neither of the two methods in Section 15 require a public hearing.  Ind. Code § 8-1.5-2-15.

This precise issues was decided by Indiana's Supreme Court in <u>Montgomery Light & Power Co. v. Town of Linden</u>, 29 N.E.2d 209 (Ind. 1940).  In that case, the Town of Linden filed

a lawsuit to acquire the local electric utility.  Id. at 210.  As here, the prior version of the statute provided "for a hearing by the municipal council to determine if public necessity and convenience require the construction or acquisition of such utility and also provide[d] for a ten day notice of such hearing to the public utility furnishing a like service in such municipality." Id. at 212.  Similar to IAWC's claim now, the Montgomery Light & Power utility contended "that it was given no notice of a hearing" and was "accorded no opportunity for a hearing on the question of the public necessity of the acquisition of said property by the town."  Id. at 211.  The Supreme Court rejected the argument, however, and confirmed the distinction between *(a) competing* with the existing utility, in which case a public hearing is required, and *(b) acquiring* the existing utility, wherein no public hearing before the council is required:

> It would seem to be clear from the language of this section that the legislature did **not** intend to require a hearing by the municipal council on the question of public necessity, where the municipality is **attempting to acquire existing utility property** from a public utility then operating such property within the municipality, but **only** intended to require such hearing and a notice to the public utility in a case **where the municipality is about to erect or construct a new utility property, which will be in competition** with a utility already operating in said municipality.

Id. at 212 (emphasis added).  The Court therefore held "that since the action was to acquire an existing utility by condemnation the appellant was not entitled to notice of a hearing before the municipal council for the determination of the question of the public necessity of such acquisition."  Id. at 212-13.  No public hearing before the Mooresville Town Council is therefore required for Mooresville to acquire IAWC's existing utility property, should it so choose.  IAWC cannot fault Mooresville for giving IAWC more process than it was due.

### B.  IAWC Received Adequate Notice and Attended the Extra Hearing

Even assuming the hearing under Sections 7 and 10 were applicable, Mooresville's notice would have satisfied any requirement there.  While IAWC alleges that it did not know "the time

-16-

and place where the hearing will be held," (Complaint ¶102), the notice plainly set forth that the hearing would be held "[a]t the August 7, 2012 meeting of the Town Council ("Council") for the Town of Mooresville."  (Complaint Ex. A).  Indeed, IAWC concedes in its Complaint that it attended the hearing and presented during the public hearing.  Specifically, the "Town Council met as planned on August 7, 2012," (Complaint ¶36), where it "allowed a period of time for public comments," (Complaint ¶38), and IAWC "made its presentation."  (Complaint ¶45).

Under Indiana law, a notice is valid even if it contains errors or omissions, as long as the reasonable person is not misled.  Ind. Code § 5-3-1-2.3 states:

> A notice published in accordance with this chapter or any other Indiana statute is valid even though the notice contains errors or omissions, as long as:
>
> > (1) A reasonable person would not be misled by the error or omission; and
> >
> > (2) The notice is in substantial compliance with the time and publication requirements applicable under this chapter or any other Indiana statute under which the notice is published.

Ind. Code § 5-3-1-2.3(a).  IAWC was not misled.  It came to the hearing, and had an opportunity to present at the hearing.  IAWC's claim that it did not know the time and place of the meeting is disingenuous, and should be denied.  Accord, City of Indianapolis v. John Clark, Inc., 201 N.E.2d 336, (Ind. 1964) (rejecting claim of condemnee that notices were defective, when condemnee did appear in person and by counsel and filed a timely remonstrance).

### III. COUNT III – MOORESVILLE'S ATTEMPTED NOTICE OF INTENT TO VISIT IAWC'S PROPERTY AND REQUEST TO REVIEW DOCUMENTS PRIOR TO ACQUIRING THE UTILITY IS NOT AN UNLAWFUL SEARCH OR SEIZURE

Mooresville is also entitled to judgment on Count III as a matter of law.  In Count III, IAWC claims that Mooresville's preliminary attempt to visit and survey the property it is considering acquiring, by sending an advance notice letter pursuant to Ind. Code § 32-24-1-3, amounts to a threatened "trespass" and "unlawful search and seizure" in violation of the Federal

and State Constitutions.  (Complaint ¶¶110, 111, 115).  Yet even assuming a preliminary survey or examination of "the property sought to be acquired" by a condemning authority could somehow rise to the level of an unconstitutional search and seizure, IAWC's allegation and the timing of the Complaint make clear that Mooresville has not entered IAWC's property and IAWC has not made its documents available for inspection.  The Constitution covers only searches and searches that have actually taken place, not *threatened or attempted* searches and seizures.  California v. Hodari D., 499 U.S. 621, 626 (1991).  And while it never occurred here, an inspection of property pursuant to Ind. Code § 32-24-1-3, in order to make a "good faith" effort to purchase the property (including related documents) before acquiring the utility, would not violate the Constitution.  Ind. Code § 32-24-1-3(c).

### A.   IAWC Filed Its Lawsuit Before Anyone Visited Its Property

Mooresville has never searched or seized any of IAWC's property, and IAWC has not alleged that a search or seizure actually took place.  See (Complaint ¶101 ("any *attempt* by the Town … *would be* a violation"); ¶115 ("the Town's *purported action would* violate")); and compare (Complaint Ex. E (providing that Mooresville's representatives "intend to enter upon Indiana American's property on October 8, 2012")), with Complaint filing date of October 4, 2012.  The U.S. Supreme Court has determined that only an actual search and seizure – not a threat or attempt – could impinge the Fourth Amendment.

In California v. Hodari D, the Court rejected a Fourth Amendment claim arising from a defendant's flight from pursuing officers, holding that it "is no seizure" when an officer yells "Stop" at a "fleeing form that continues to flee."  Id. at 627.  The Court explained that "neither usage nor common-law tradition makes an *attempted* seizure a seizure," id. at 626 n.2 (emphasis in original), and "[a]n arrest requires *either* physical force … *or*, where that is absent, *submission*

to the assertion of authority." Id. at 626 (emphasis in original). Thus, although the officer's pursuit in Hodari D. constituted a "show of authority," because the defendant "did not comply with the injunction he was not seized until he was tackled." Id. at 629. The Supreme Court further later rejected the argument that "the Fourth Amendment should cover not only seizures, but also failed attempts to make a seizure" as "foreclosed by" Hodari D. in City of Sacramento v. Lewis, 523 U.S. 833, 845 n.7 (1998). Again, the Court explained, "[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment." Id.

Indiana's Supreme Court has similarly recognized that "[i]n the law of searches and seizures, the term 'search' implies a prying into hidden places for that which is concealed," McCoy v. State, 170 N.E.2d 43, 48 (Ind. 1960), and held that "there was no actual search of the home" when police stood on a porch and requested that a defendant's son retrieve stolen merchandise out of the home. Id.; see also Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984) ("The initial contact between the officers and respondent, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest.").[4]

Mooresville has not pried into IAWC's hidden places to inspect its property or documents. Nor has it seized anything. Instead, IAWC has sued Mooresville over a notice that it intended to visit IAWC's property and a request to view IAWC's documents. There is no Fourth Amendment trigger without an actual search or seizure.

---

[4] It is also telling that IAWC's characterizes the proposed inspection as "an unlawful trespass." (Complaint ¶110). Trespassing, even had someone entered IAWC's property, "does not infringe the federal Constitution" nor 42 U.S.C. § 1983: "It was not intended by the fourteenth amendment or the Civil Rights Act that trespass to property, normally within the exclusive cognizance of the states, should become a matter of national concern." KAO v. Red Lion Municipal Authority, 381 F.Supp. 1163, 1166 (M.D. Penn. 1974).

### B.  Pre-Condemnation Inspections are Not Unconstitutional

Even assuming IAWC had permitted Mooresville to visit the property and inspect its books and records, it still would not be a constitutional violation.  In State v. Tindell, 399 N.E.2d 746, 746 (Ind. 1980), the Indiana Supreme Court considered the validity of a warrantless inspection of a vehicle dealer for auto titles, as permitted by the Indiana Code.  In holding that the inspection was valid under constitutional scrutiny, the court explained the validity of inspections on "industries that have a long history of governmental control and involve a high level of public interest in the regulatory scheme."  Id. at 747-48.  The Court looked to a series of factors to consider the reasonableness of the warrantless inspections, including "whether the statute provides criminal penalties for refusal to permit inspection, whether notice is given of an impending inspection, and whether notice is unreasonable given the ease with which violations can be concealed in a short period of time."  Id. at 748 (citing Wyman v. James, 400 U.S. 309 (1971), and United States v. Biswell, 406 U.S. 311 (1972)).  Because the statute at issue "concerns the highly regulated motor vehicle industry," and "[t]here [was] no criminal provision for refusal to consent to an inspection," the statutory inspection was constitutional.

As in Tindell, Ind. Code § 32-24-1-3's grant to a condemnor to enter upon land to examine and survey property as a preliminary step in condemnation is not unconstitutional, and particularly not as applied to a heavily regulated public utility that has "consented" to being acquired.  Ind. Code §§ 8-1-2-92 & 93.  IAWC, by "acceptance" of its indeterminate permit to provide water service in Mooresville, is "deemed to have consented to a future purchase or condemnation of its property . . . under the terms and conditions as provided in IC 8-1.5-2," and has "waived all other remedies and rights relative to condemnation."  Ind. Code § 8-1-2-93.  Ind. Code § 8-1.5-2, in turn, provides that Mooresville "may exercise the power of eminent domain in

accordance with IC 32-24," Ind. Code § 8-1.5-2-15(c), which necessarily includes the right to "enter upon any land to examine and survey the property sought to be acquired."  Ind. Code § 32-24-1-3.  "The businessman in a regulated industry in effect consents to the restrictions placed upon him."  Tindell, 399 N.E.2d at 483 (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978).  IAWC knew the regulatory framework it accepted when it chose to provide water utility service in Mooresville.

Moreover, the statute provides no criminal penalties for IAWC's refusal to permit inspection, and IAWC receives fourteen days advance notice, Ind. Code § 32-24-1-3(g), which proved to be more than enough time to refuse to permit inspection here.  IAWC's "privacy is minimally invaded" by the inspection, and it knows "that [its] business is extensively regulated." Tindell, 933 N.E.2d at 483.  Accordingly, had any warrantless inspection of IAWC's property actually occurred under Ind. Code § 32-24-1-3, it would have been "constitutional and not a violation of [IAWC]'s Fourth Amendment rights."  Id.

### C.  IAWC Cannot Complaint About Mooresville's Request to Review Documents

The complete lack of any constitutional claim aside, IAWC's also makes much ado about Mooresville's "request" that a list of items also "be made available for examination" in addition to the land.  (Complaint ¶114, Ex. E).  Specifically, Mooresville's notice under Ind. Code § 32-24-1-3 included the following:

> To minimize the inconvenience to your business, the Town would request that the following items (which the Town seeks to acquire) be made available for examination:
>
> 1.   An contracts that Indiana American has (Mooresville utility only) with other utilities and/or entities;
>
> 2.  All titles for vehicles and equipment;

3.  All engineering reports, maintenance and repair logs, and wellhead protection plans;

4.  All reports, studies, maps, and other information detailing all of the facilities used by Indiana American to provide service to the Mooresville customers;

5.  All permits, approvals, and documentation indicating outstanding loans and liabilities of the utility; and

6.  All reports, studies, and compliance papers filed with any state or federal agency.

(Complaint Ex. E).

While IAWC calls the request to view these documents "pervasive and unlawful," (Complaint ¶114), there is nothing nefarious about a "request" to view documents that might be relevant to the value of the utility being considered for acquisition. Coterminous with Mooresville's right to preliminarily "examine and survey the property sought to be acquired," Ind. Code § 32-24-1-3(b)(1), is the responsibility to "make an effort to purchase" IAWC's utility before proceeding to condemn, Ind. Code § 32-24-1-3(b)(2), including "providing the owner of the property with an appraisal or other evidence used to establish the proposed purchase price" and "conducting good faith negotiations."  Ind. Code § 32-24-1-3(c).  It is entirely consistent with that process to request, in good faith, to review the documents and materials that might shed light on a "proposed purchase price" or otherwise could inform an "appraisal."

And while IAWC wants to restrict the phrase "property sought to be acquired" to include only "land," the Indiana General Assembly has not used them interchangeably, instead giving Mooresville the right to "enter upon any land" in order examine and survey "the property sought to be acquired" – not just to examine "the land." Ind. Code § 32-24-1-3(b)(1).

IAWC does not want Mooresville to peer into the value of the utility because IAWC does not want to be acquired as permitted by law.  Though Mooresville disagrees with IAWC's

-22-

interpretation of the statute, Mooresville has nevertheless made an attempt to examine and survey some of IAWC's records only to be refused by IAWC.  IAWC cannot later complain that an appraisal of its property is insufficient because Mooresville did not review certain materials, when it is IAWC that has now refused to permit Mooresville to view them.

## IV.   COUNT IV – IAWC'S REQUEST FOR ATTORNEY'S FEES AND CIVIL PENALTIES UNDER THE ACCESS TO PUBLIC RECORDS ACT SHOULD BE DENIED.

Count IV of the Complaint alleges a violation of the Indiana Access to Public Records Act ("APRA"), found at Ind. Code § 5-14-3-1, *et seq*.  As relief, IAWC asks in part that the Court award IAWC attorney's fees and civil penalties under Ind. Code §§ 5-14-3-9 & 9.5. (Complaint ¶134).   While IAWC has crafted allegations of "unreasonableness" to avoid automatic dismissal of Count IV altogether – namely, that it was "unreasonable" for Mooresville to not produce the broad records requested *within fourteen (14) days* (Complaint ¶¶121-24) – at a minimum, IAWC cannot recover attorney's fees and civil penalties as it requests under Count IV.

Even assuming IAWC's public records allegation were true, it has not obtained an opinion from Indiana's public access counselor prior to filing its lawsuit and it therefore could not recover attorney's fees or penalties under APRA.  Ind. Code § 5-14-3-9(i) allows a Court to award attorney's fees and costs to a "substantially prevail[ing]" plaintiff under APRA only if it first seeks and obtains an opinion from the public access counselor on the alleged violations. Specifically:

> The plaintiff **is not eligible** for the awarding of attorney's fees, court costs, and other reasonable expenses **if the plaintiff filed the action without first seeking and receiving** an informal inquiry response or advisory opinion from the public access counselor

Ind. Code § 5-14-3-9(i) (emphasis added).[5]  The only exception to the rule is if it was necessary for the plaintiff to file the action in order to "present[] that public record to a public agency preparing to act on a matter of relevance to the public record," id., which has no applicability here.  Instead, in its rush to file a lawsuit to interfere with the utility acquisition process by Mooresville, IAWC has not first sought and received an opinion from the public access counselor.[6]  IAWC could not even remotely allege having done so.  IAWC therefore could not recover attorney's fees and costs under Ind. Code § 5-14-3-9 as a matter of law.[7]

IAWC's failure to first seek an opinion from the public access counselor also precludes it from recovering civil penalties under APRA.  Ind. Code § 5-14-3-9.5 was added in 2012 to allow civil penalties – $100 for a first offense, Ind. Code § 5-14-3-9.5(h) – for APRA violations in certain circumstances.  However, civil penalties would only be available here if IAWC first sought an opinion from the public access counselor:

> A civil penalty may only be imposed as part of an action filed under section 9 of this chapter. A court **may not impose a civil penalty** under this section **unless the public access counselor has issued an advisory opinion**:
>
> > (1) to the complainant and the public agency;
> >
> > (2) that instructs the public agency to allow access to the public record; and

---

[5] The procedures for seeking an opinion form the public access counselor are found in Ind. Code § 5-14-5-1 et seq.

[6] The Indiana Public Access Counselor's 2012 opinions are available online at http://www.in.gov/pac/advisory/2453.htm and http://www.in.gov/pac/informal/2455.htm.  Of course, because IAWC did not first seek an opinion from the public access counselor, none found there are related to its lawsuit.

[7] Importantly, IAWC's failure to first seek an opinion from the public access counselor does not preclude Mooresville from recovering fees and costs from IAWC under APRA.  That is, IAWC can still be required to pay Mooresville's attorneys' fees and costs if Mooresville "substantially prevails and the court finds the action was frivolous or vexatious."  Ind. Code § 5-14-3-9(i)(2).

(3) **before the action** under section 9 of this chapter is filed.

Ind. Code § 5-14-3-9.5(e) (emphasis added); <u>see also</u> Ind. Code § 5-14-3-9.5(c) (providing that civil penalties are available if the public agency willfully still denies the request after the public access counselor has instructed the agency to allow access).   "Section 9" of the chapter also confirms that IAWC was first required to seek an opinion before filing this lawsuit:

> A court may assess a civil penalty under section 9.5 of this chapter **only if the plaintiff obtained an advisory opinion from the public access counselor <u>before</u> filing an action** under this section as set forth in section 9.5 of this chapter.

Ind. Code § 5-14-3-9(j) (emphasis added).   IAWC therefore also could not recover civil penalties under APRA, and that portion of its Complaint should also be denied.

## V.   THE INDIVIDUAL DEFENDANTS ARE IMMUNE FROM SUIT

Finally, although IAWC has not parsed a basis for individual liability, IAWC has sued the five members of the Mooresville Town Council in their individual capacities.   (Complaint ¶¶4-8).   Even assuming one of IAWC's claims survives, the individual members of the Town Council cannot be sued for legislative activity, <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 49 (1998); Ind. Code § 34-13-3-5(a), and IAWC is not permitted to "chill" the decision making of the Town Council members by threatening individual liability in this lawsuit.   <u>Biblia Abierta v. Banks</u>, 129 F.3d 899, 903 (7th Cir. 1997).

### A.   The Individual Town Council Members have Absolute Immunity

As a unanimous Supreme Court held in <u>Bogan v. Scott-Harris</u>, local legislators "are absolutely immune from liability for their legislative activities."   523 U.S. at 48-49.   That absolute immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" <u>Id.</u> at 54 (quoting <u>Tenney v. Brandhove</u>, 341 U.S. 367, 376 (1951)).   Moreover, whether an

action is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." Id.

The plaintiff in Bogan sued a mayor and city council chairman alleging that the elimination of her position by the council and mayor was motivated by racial animus and retaliation. Id. at 46-47. But, "stripped of all considerations of intent and motive," the Court "had little trouble concluding" that the defendants were immune from suit. Id. at 55. The Court recognized that the "acts of voting for an ordinance were, in form, quintessentially legislative," and the introduction and signing into law of the ordinance at issue "were integral steps in the legislative process." Id. Even formality aside, the Court noted that the ordinance eliminating the position "bore all the hallmarks of traditional legislation" and "reflected a discretionary, policymaking decision" that implicated "the services the city provides to its constituents." Id. at 55-56.

A year before Bogan, the Seventh Circuit itself held that a city alderman had absolute immunity from suit for his participation in considering and voting on a zoning ordinance, which the plaintiff claimed was intentionally pressed by the alderman to prevent it from using a particular property as its church. Biblia Abierta v. Banks, 129 F.3d at 901. In rejecting the plaintiffs' invitation to "narrow the scope of 'core' legislative activity protected by legislative immunity," the Biblia Abierta Court explained the policy at play:

> Private lawsuits threaten to chill zealous representation by encouraging legislators to avoid controversial issues or stances in order to protect themselves "not only from the consequences of litigation's results but also from the burden of defending themselves."
> …
> If legislators feared that they would be subject to civil liability for their attempts to introduce new legislation or propose amendments, our government would become more stagnant; changes would not be considered, let alone implemented. To encourage legislators best to represent their constituents' interests, legislators

must be afforded immunity from private suit.  If this protection is not provided, the structure of our government would collapse.

Id. at 903, 904.   The Court therefore held that, in addition to the obvious immunity for "introducing and voting on legislation," the allegedly ill-motivated requests by the alderman to continue hearings on the proposal "were inextricably intertwined with the legislative process of introducing and voting on the zoning ordinances and cannot be separated from those legislative functions."  Id. at 906.

The individual members of the Mooresville Town Council are also absolutely immune from IAWC's lawsuit.  While it is unclear from the Complaint, it appears that the only count that IAWC suggests gives rise to individual liability is the due process claim in Count I.  (Complaint ¶¶83, 84, 87, 88, 90, 91, 93, 95 (containing allegations against the "Town Council and its individual members" or the "Town Council and all of its individual members")).  Yet Count I in particular, and all of the Complaint in general, attacks the individual members for the process, consideration, and promulgation of an "Enacted Ordinance," (e.g., Complaint ¶83), all of which is "quintessentially legislative."  Bogan, 523 U.S. at 55.  Providing notice of a meeting, how it conducts a hearing, whether or not a presentation is made before or after public comment, and deciding to adopt an Ordinance declaring a "public convenience and necessity" are all "inextricably intertwined with the legislative process of introducing and voting on the … ordinance and cannot be separated from those legislative functions."  Biblia, 129 F.3d at 906.  It is particularly telling that IAWC's allegations are against the collective group of council members.[8]  Indeed, Mooresville's consideration of whether or not to acquire IAWC's facilities is

---

[8] IAWC does not reference any individualized conduct of any particular council member.  Even if it had, Mooresville anticipates that any such conduct would also be subject to qualified immunity.  Pearson v. Callahan, 555 U.S. 223, (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not

itself purely legislative: "It has long been established that the necessity of taking property for public use is purely a legislative question and not a proper subject for judicial review." State v. Collom, 720 N.E.2d 737, 740 (Ind. Ct. App. 1999).

### B.  Indiana Law Prohibits IAWC From Suing the Council Members Individually

IAWC's claims against the council members in their individual capacities are also barred under state law.   Under Ind. Code § 34-14-1-11, the municipality, and not the individual members of the legislative body, is the party of interest "in any proceeding that involves the validity of a municipal ordinance or franchise."   Moreover, civil actions arising from the acts taken by a town council may only be brought against the town, and not its individual members. Specifically:

> Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity **may be brought only against** the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity. **A member** of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity **may not be named as a party in a civil suit that concerns the acts taken** by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment. For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

Ind. Code § 34-13-3-5(a) (emphasis added).   IAWC is therefore precluded from suing the Council members in their individual capacity under state law as well.

IAWC's inclusion of individual Town Council members serves no purpose other than to chill their consideration of acquiring IAWC's facilities.  IAWC wants the Town Council to be

---

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").  The "clearly established" right in this case is Mooresville's right to acquire IAWC's facilities by "consent," and IAWC's right – at some point in the future – to receive proper compensation.  Ind. Code § 8-1-2-93.

"stagnant" and "fear" considering or implementing, <u>Biblia Abierta</u>, 129 F.3d at 904, decisions that implicate "the services the [town] provides to its constituents." <u>Bogan</u>, 523 U.S. at 55. This is precisely the type of lawsuit that merits immunity.

<u>**CONCLUSION**</u>

The Court should enter judgment in favor of Mooresville on Counts I, II, and III of IAWC's Complaint as a matter of law. The Court should also enter judgment denying IAWC's request for civil penalties or attorneys' fees under Count IV, and the individual members of the Mooresville Town Council should be dismissed from the case.

Respectfully submitted,

*/s/ Alan S. Townsend*
Alan S. Townsend, Atty. No. 16887-49
Stephen C. Unger, Atty. No. 25844-49
J. Christopher Janak, Atty. No. 18499-49

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Phone: (317) 684-5000
Fax:     (317) 684-5173
E-mail Address: atownsend@boselaw.com
                       sunger@boselaw.com
                       cjanak@boselaw.com

Caren Pollack, Atty. No. 11897-49
Pollack Law Firm, P.C.
Three Meridian Plaza
10333 N. Meridian St., Suite 111
Indianapolis, IN 46290
Phone: (317) 660-4880
Fax:     (317) 660-4888
E-mail Address:  cpollack@pollacklawpc.com

*Attorneys for Defendants, the Town of Mooresville,*
*the Mooresville Town Council, George Watkins, Jeffrey M.*
*Cook, Anthony Langley, Virginia Perry, and Mark Mathis*

-29-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of November, 2012, a copy of the foregoing "Defendants' Memorandum of Law in Support of Their Motion for Partial Judgment on the Pleadings" was filed electronically.  Notice of this filing was sent to the following by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Nicholas K. Kile
nick.kile@btlaw.com

Bart Karwath
bart.karwath@btlaw.com

Mark Crandley
mark.crandley@btlaw.com


*/s/ Alan S. Townsend*
Alan S. Townsend

2239560_2.

-30-