UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANA-AMERICAN WATER COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| TOWN OF MOORESVILLE, THE MOORESVILLE TOWN COUNCIL, GEORGE WATKINS, JEFFREY M. COOK, ANTHONY LANGLEY, VIRGINIA PERRY, and MARK MATHIS, | ) ) ) ) ) ) ) ) | CAUSE NO.:  1:12-CV-1493-TWP-DML |
| Defendants. | ) | |

**CASE MANAGEMENT PLAN**

**I.      Parties and Representatives**

    A.      <u>Plaintiff:</u>  Indiana American Water Company, Inc.

          <u>Defendants:</u>   Town of Mooresville, Indiana, the Mooresville Town Council,
                    George Watkins, Jeffrey M. Cook, Anthony Langley,
                    Virginia Perry, and Mark Mathis

    B.      Plaintiff' Counsel:

          Nicholas K. Kile
          Bart A. Karwath
          Mark J. Crandley
          Barnes & Thornburg LLP
          11 South Meridian Street
          Indianapolis, Indiana  46204-3535
          nick.kile@btlaw.com
          bart.karwath@btlaw.com
          mark.crandley@btlaw.com
          Telephone:  (317) 236-1313
          Facsimile:  (317) 231-7433

Defendants' Counsel:

Alan S. Townsend
Stephen C. Unger
J. Christopher Janak
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
atownsend@boselaw.com
sunger@boselaw.com
cjanak@boselaw.com
Telephone:  (317) 684-5000
Facsimile:  (317) 684-5173

Caren L. Pollack
Pollack Law Firm, P.C.
Three Meridian Plaza
10333 N. Meridian Street, Suite 111
Indianapolis, Indiana 46290
cpollack@pollacklawpc.com
'
Telephone:  (317) 660-4880
Facsimile:  (3170 660-4888

## II.   <u>Synopsis of Case</u>

   A.   <u>Plaintiff's Synopsis:</u>

   On October 4, 2012, Plaintiff Indiana-American Water Company ("IAWC") filed its complaint against the Defendants in the Morgan County Superior Court.  The complaint contains four counts:  1.  Violation of Due Process; 2.  Failure to Give Proper Notice under Ind. Code § 8-1.5-2-10; 3. Unlawful Search and Seizure; and 4. Violation of the Indiana Access to Public Records Act.  On October 15, 2012, Defendants removed the case to this Court, invoking the Court's subject matter jurisdiction established by 28 U.S.C. § 1331.  Plaintiff's complaint asserts claims for, among other things, violation of the United States Constitution, and seeks declaratory, injunctive, and other relief, including relief pursuant to 42 U.S.C. § 1983.  Accordingly, there is subject matter jurisdiction in this Court.  Plaintiff's complaint is based on, among other actions, the Defendants' failure to provide proper notice of a public hearing, failure to provide a copy of proposed ordinance to be considered at the public hearing (and failure to provide other documents), failure to allow IAWC adequate means to address the proposed ordinance at a public hearing, Defendants' prejudging matters, taking action for the personal benefit of one or more of the Defendants, and the Defendants' attempt to enter upon IAWC's property and examine contracts, title paperwork for vehicles and equipment, engineering reports, maintenance and repair logs, plans, studies, maps, reports, permits, approvals, loan documentation, liability documentation and other papers.

B.     Defendants' Synopsis:

IAWC is required under Indiana law to "consent" to the purchase or condemnation of its water utility by Mooresville, Ind. Code § 8-1-2-93, but IAWC has filed this lawsuit in an effort to avoid consenting and to block the future condemnation of its utility.  In Count I, IAWC has filed a due process claim for the taking of a claimed interest in its water operation and service territory, but IAWC has not exhausted its state remedy of inverse condemnation and does not have a protected property interest in any water service area in and around Mooresville.  In Count II, IAWC claims that it did not receive adequate notice under Ind. Code § 8-1.5-2-10, but that statute does not apply where Mooresville purchases or condemns IAWC's utility and IAWC in fact attended and participated in the public hearing.  In Count III, IAWC claims a search and seizure, but its property was never searched or seized, nor is a pre-condemnation property inspection under Ind. Code § 32-24-1-3 an unconstitutional inspection.  In Count IV, IAWC asks for costs and attorneys' fees and claims that Mooresville did not produce documents within a "reasonable time," but IAWC did not first seek an opinion from the Indiana Public Access Counselor prior to filing its Complaint.  Moreover, the documents were provided within fifteen (15) days which is more than reasonable.  IAWC also has sued the elected members of the legislative Town Council in their individual capacities and those individuals have both absolute immunity and qualified immunity and otherwise cannot be sued under Indiana law.  Finally, IAWC's lawsuit is baseless, and the Defendants anticipate seeking attorneys' fees and sanctions.

III.     **Pretrial Pleadings and Disclosures**

A.     The parties shall serve their Fed. R. Civ. P. 26 initial disclosures on or before **January 15, 2013.**

B.     Plaintiff shall file preliminary witness and exhibit lists on or before **March 15, 2013.**

C.     Defendants shall file preliminary witness and exhibit lists on or before **April 15, 2013.**

D.     All motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before **March 15, 2013.**

E.     Plaintiff shall serve Defendants (but not file with the Court) a statement of special damages, if any, and make a settlement demand, on or before **March 15, 2013.**  Defendants shall serve on the Plaintiff (but not file with the Court) a response thereto within 30 days.

F.     Plaintiff shall disclose the name, address, and vita of any expert witness, and shall serve the report required by Fed. R. Civ. P. 26(a)(2) on or before **October 15, 2013.**  Defendants shall disclose the name, address, and vita of any expert witness, and shall serve the report required by Fed. R. Civ. P. 26(a)(2) on or before **December 15, 2013**.

G.     If a party intends to  use expert testimony in connection with a motion for summary judgment to be filed by that party, such expert disclosures must be served on opposing counsel no later than 60 days prior to the dispositive motion deadline.  If such expert disclosures are filed the

parties shall confer within 7 days to stipulate to a date for responsive disclosures (if any) and completion of expert discovery necessary for efficient resolution of the anticipated motion for summary judgment.  The parties shall make good faith efforts to avoid requesting enlargements of the dispositive motions deadline and related briefing deadlines.  Any proposed modifications of the CMP deadlines or briefing schedule must be approved by the court.

H.      Any party who wishes to limit or preclude expert testimony at trial shall file any such objections no later than **March 15, 2014.**  Any party who wishes to preclude expert witness testimony at the summary judgment stage shall file any such objections with their responsive brief within the briefing schedule established by Local Rule 56-1.

I.      All parties shall file and serve their final witness and exhibit lists on or before **January 15, 2014**.

J.      Any party who believes that bifurcation of discovery and/or trial is appropriate with respect to any issue or claim shall notify the Court as soon as practicable.

K.       The parties both have concerns about discovery and the preservation/destruction of relevant electronic data as discussed in Section IX, "Other Matters."

The parties, however, have agreed to the following with respect to discovery/document production:

Each party understands the need to preserve relevant electronic data.  Potential items will be de-duplicated on a custodian level and collected in a method which preserves the file location, custodian information, and metadata.  Bates numbered images will be created directly from the original electronic documents for all items excluding non-printable files, large drawings, files saved in proprietary software and database tables. All audio files and video files shall be produced in native format with the source file path provided. Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party.  Bates numbering should be sequential, maintain a constant length (zero/0-padded) across the entire production, and contain no special characters or embedded spaces. The parties agree to use placeholders (such as "intentionally left blank" pages), rather than skipping Bates numbers in production. The parties agree to provide a placeholder image for all files that are not successfully converted to image such as non-printable files, large drawings, files saved in proprietary software and database tables and data, or other unique/proprietary formats. If possible, the parties will place a printed description of the file (such as file path or file name) on all such placeholders. If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production and provide a brief explanation for skipping the Bates numbers.

To the extent response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the responding party shall produce reports from the database.  Upon review of the reports, the receiving party may request additional information to explain the database scheme, codes, or abbreviations. To the extent discoverable electronic information produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the producing party shall produce reports from such third-party software. The parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of data that requires third-party software to access and

further seek to attempt to minimize any expenses and burden that may be incurred in obtaining software from any third party. The parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

The parties agree that their respective technical teams shall meet and confer regarding precise production of any other files and data that are not successfully converted to image.

All document images will be provided in single page group IV black and white 300 dpi TIF format, unless it is necessary to produce these images in color to preserve information that would not be visible on a black and white image, with a DII or LFP import file (which is used for Summation, Concordance and other document management systems) and clearly defined document boundaries. The parties will each provide extracted text for their own electronic documents where applicable, which will be incorporated into the import files. The load files should not include the Full Text field.

All documents will be named by BegDoc#, and produced in a separate folder with a cross-reference file in delimited text format. The following metadata fields will be automatically extracted and provided (availability depending on document type): Begdoc#, Enddoc#, Custodian, FileName, FilePath, FileExtension, From, To, BCC, CC, DateSent, TimeSent, DateReceived, TimeReceived, Subject (Email Topic), NumAttach, AttchIDs, AttchBegin, AttchEnd, DateCreated, DateModified, Title, Author, and FileSize. This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the electronically stored information or that do not exist as part of the original metadata of the document. The parties retain the right to move the Court for the production of additional electronic metadata fields should ongoing discovery reveal the need for such metadata. The parties will <u>not</u> provide extracted text or metadata for documents that contain redactions. While each party will initially produce documents in TIF and not native format, each party reserves the right to request documents in native format should a party demonstrate a need to obtain a particular document in such a format. The parties agree to limit the request for such files in good faith, and submit any request according to the following protocol:

    (a)    The receiving party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

    (b)    The producing party shall have 10 days to produce the documents, or it may object to the demand as follows:

        (i)    Within 10 days of receiving a request to produce native documents, the producing party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

        (ii)    The parties will meet and confer regarding the request and corresponding objection(s), and if the parties are unable to agree as to the production of the requested files in native format within

10 days of submission of the responding party's objection(s), the parties will submit the matter to the Court.

(c)     To the extent native files are produced, ensure tracking, data integrity, and to provide a means for authentication, the parties agree that all produced native files will be assigned a unique file name or identifier and a hash value.

    (i)     The unique file name shall be the Beginning Bates number of the document's underlying TIFF images.

    (ii)     The hash value shall be the MD5 or SHA1 value generated on the production media.

(d)     The parties agree that redacted documents will be provided in image form only, and that no corresponding native file will be provided (regardless of file type).

(e)     To the extent that decryption or access passwords are necessary to unlock any electronic document in its native form, including, without limitation, electronic mail passwords and file decryption passwords, the parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.

In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  Images for each document shall be contained in the same folder. The parties will make their best efforts to unitize documents correctly and will commit to address situations where there are improperly unitized documents. For each document scanned or otherwise converted into electronic form from paper copy documents, an OCR text file shall be provided along with the corresponding TIFF images. The text file shall be at the document level and named after the Beginning Bates number of the document. The following objective coding fields shall be provided for all produced hard copy documents:

(a)     Beginning Bates Number;

(b)     Ending Bates Number;

(c)     Beginning Attachment Bates Number (if applicable);

(d)     Ending Attachment Bates number (if applicable); and

(e)     Page count.

Every TIFF image in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production.

Should the producing party withhold any document based on a claim of privilege, the producing party shall, pursuant to Fed. R. Civ. P. 26 (b)(5) and U.S. District Court for the Southern District of Indiana Local Rules, provide a privilege log containing at least the following information:

(a)    The identity of each document's author, writer, sender;

(b)    The identity of each document's recipient, addressee, or person for whom it was intended;

(c)    The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document;

(d)    The general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document;

(e)    The basis for any claims(s) of privilege (e.g., attorney-client privilege); and

(f)    The number of pages in the document.

Should the producing party redact any document based on a claim of privilege the producing party shall make a notation of the redaction and provide a privilege log pursuant to the provisions of this protocol. During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration, or addition the content of such data, including any metadata associated therewith. The privilege log is due one week after the respective production deadline unless otherwise agreed by the parties or ordered by the Court.

In the interest of expediting discovery in these proceedings and avoiding unnecessary costs, inadvertent or unintentional disclosure in this litigation of privileged information and/or work product shall not be deemed a waiver, in whole or in part, of any otherwise valid claim of privilege, immunity, or other protection.  In the case of inadvertently produced privileged and/or work product documents, when a recipient becomes aware that he or she has received documents that clearly were inadvertently produced, or upon a request made by a producing party, the documents together with all copies made of them and any notes made from them shall be returned forthwith to the party claiming privilege and/or work product immunity (work product may be destroyed rather than provided to the producing party).  Any documents inadvertently produced, whether paper or electronic, shall be removed from the receiving party's database (as applicable) and destroyed.  All electronically stored copies shall be removed from any of the receiving party's databases.  No further uses or disclosures shall be made of the inadvertently-produced materials,

and the receiving party shall take all reasonable and appropriate steps to retrieve the materials, and all copies, from any person to whom the receiving party has provided them.  The parties shall have the benefit of all limitations on waiver afforded by Federal Rule of Evidence 502.  Any inadvertent disclosure of privileged information shall not operate as a waiver in any other federal or state proceeding, and the parties' agreement regarding the effect of inadvertent disclosure of privileged information shall be binding on non-parties to this litigation.  Any party may, within 10 business days after notification of the inadvertent disclosure under this paragraph, object to the claim of inadvertence by notifying the producing party in writing of that objection and specifying the material to which the objection is made.  The parties shall confer within 5 business days of service of any written objection.  If the objection is not resolved, the producing party shall, within 5 business days of the conference, file and serve a motion to resolve the dispute, and shall file a copy of the disputed document(s) under seal with the Court. The receiving party may not use or disclose the information until the claim regarding the disputed document(s) is resolved. To the extent that any party obtains any information, documents, or communications through inadvertent or unintentional disclosure, such information, documents and communications shall not be filed or presented for admission into evidence or sought in discovery by that party in this matter.

The parties shall meet and confer to develop appropriate provisions for authenticating discoverable electronic information produced hereunder, and for using such at deposition or in any other evidentiary manner, subject to the provisions of any protective order entered in this case, including, but not limited to, procedures for the identification of production numbers associated with data produced in electronic form and reproduced for use at deposition or trial.

The parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. This includes, but is not limited to, discussions and agreement regarding confidentiality designations for documents and the need for any protective orders to protect trade secret, proprietary, and/or confidential information of the parties. Issues shall be raised promptly in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties will use their best efforts to raise any objections or other requests related to a production within thirty (30) days of receipt of that production. In any event, the parties must raise any objections or other issues sufficiently in advance of the close of discovery to permit good faith negotiations to resolve the matter and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

## IV.    Discovery[1] and Dispositive Motions

__X__ Track 2: Dispositive motions are expected and shall be filed by **October 15, 2013**; non-expert witness discovery and discovery relating to liability issues shall be completed by  **August 15, 2013**; expert witness discovery and discovery relating to damages shall be completed by **January 15, 2014.**

---

[1] The term "completed," as used in Section IV.B, means that counsel must serve their discovery requests in sufficient time to receive responses before this deadline.  Counsel may not serve discovery requests within the 30-day period before this deadline unless they seek leave of Court to serve a belated request and show good cause for the same.  In such event, the proposed belated discovery request shall be filed with the motion, and the opposing party will receive it with service of the motion but need not respond to the same until such time as the Court grants the motion.

> Absent leave of court, and for good cause shown, all issues raised on summary judgment under Fed. R. Civ. P. 56 must be raised by a party in a single motion.

## V.    Pre-Trial/Settlement Conferences

The parties believe that an initial pre-trial conference with the Magistrate Judge in person would be appropriate.

## VI.    Trial Date

The presumptive trial date is 18 months from the Anchor Date.  The parties request a trial date in **May 2014**.  The trial is by jury and is anticipated to take  five (5) days.

## VII.    Referral to Magistrate Judge

At this time, all parties do not consent to refer this matter to the currently assigned Magistrate Judge pursuant to 28 U.S.C. 636(b) and Federal Rules of Civil Procedure 73 for all further proceedings including trial.

## VIII.    Required Pre-Trial Preparation

### A.    TWO WEEKS BEFORE  THE FINAL PRETRIAL CONFERENCE, the parties shall:

1.    File a list of witnesses who are expected to be called to testify at trial.

2.    Number in sequential order all exhibits, including graphs, charts and the like, that will be used during the trial.  Provide the Court with a list of these exhibits, including a description of each exhibit and the identifying designation.  Make the original exhibits available for inspection by opposing counsel.  Stipulations as to the authenticity and admissibility of exhibits are encouraged to the greatest extent possible.

3.    Submit all stipulations of facts in writing to the Court.  Stipulations  are always encouraged so that at trial, counsel can concentrate on relevant contested facts.

4.    A party who intends to offer any depositions into evidence during the party's case in chief shall prepare and file with the Court and copy to all opposing parties either:

    a.    brief written summaries of the relevant facts in the depositions that will be offered.  (Because such a summary will be used in lieu of the actual deposition testimony  to eliminate time reading depositions in a question and answer format, this is strongly encouraged.); or

    b.    if a summary is inappropriate, a document which lists the portions of the deposition(s), including the specific page and line numbers, that will be read, or, in the event of a video-taped deposition, the portions of the deposition that will be played, designated specifically by counter-numbers.

5.    Provide all other parties and the Court with any trial briefs and motions in limine, along with all proposed jury instructions, voir dire questions, and areas of inquiry for voir dire (or, if the trial is to the Court, with proposed findings of fact and conclusions of law).

6.    Notify the Court and opposing counsel of the anticipated use of any evidence presentation equipment.

**B.    ONE WEEK BEFORE THE FINAL PRETRIAL CONFERENCE, the parties shall:**

1.    Notify opposing counsel in writing of any objections to the proposed exhibits. If the parties desire a ruling on the objection prior to trial, a motion should be filed noting the objection and a description and designation of the exhibit, the basis of the objection, and the legal authorities supporting the objection.

2.    If a party has an objection to the deposition summary or to a designated portion of a deposition that will be offered at trial, or if a party intends to offer additional portions at trial in response to the opponent's designation, and the parties desire a ruling on the objection prior to trial, the party shall submit the objections and counter summaries or designations to the Court in writing. Any objections shall be made in the same manner as for proposed exhibits. However, in the case of objections to video-taped depositions, the objections shall be brought to the Court's immediate attention to allow adequate time for editing of the deposition prior to trial.

3.    File objections to any motions in limine, proposed instructions, and voir dire questions submitted by the opposing parties.

4.    Notify the Court and opposing counsel of requests for separation of witnesses at trial.

**IX.    <u>Other Matters</u>**

From the Defendants: On November 19, 2012, the Defendants filed the Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 14) and the Defendants' Memorandum of Law in Support of Their Motion for Partial Judgment on the Pleadings (Dkt. 15). Though the Defendants' Motion for Partial Judgment on the Pleadings is not jurisdictional, it raises an number

of legal challenges to the allegations set forth in the Plaintiff's Complaint for Declaratory and Injunctive Relief and for Damages.  If the Court grants the Defendants' Motion for Partial Judgment on the Pleadings, even in part, the scope of this lawsuit will be significantly different. As such, the Defendants believe it would be advisable and appropriate to refrain from approving the Case Management Plan until the Defendants' Motion for Partial Judgment on the Pleadings is fully briefed and resolved by the Court.

The Defendants also are concerned that the Plaintiff intends to take action that unnecessarily increases the attorneys' fees and costs for the Defendants.  On August 7, 2012, Nicholas Kile, one of the attorneys for the Plaintiff, addressed the Mooresville Town Council and, among other things, stated as follows:

> A hostile governmental takeover through eminent domain is going to be very contentious and expensive.  I suspect far more contentious and far more expensive than you could possibly imagine.  And at the end of the day, the only ones who are going to be happy are Chris and me because we are going to get paid a lot of money to fight this fight.  But at the end of the day, the fight is going to last well beyond your terms in office, it will create deep divisions in your community, you will have heated political debates within your community about whether it's appropriate for the government to pursue a takeover of a private business on a basis that the government thinks it can run the business better than the private sector.  Ultimately, I believe whatever promises are being made, it will fail to live on those promises and at the end both you and Indiana-American will have paid to Chris and to me staggering sums of money to fight this fight.

Less than two months later, the Plaintiffs filed this lawsuit.  The Defendants anticipate that the Plaintiff will attempt to utilize this lawsuit, and the discovery process, to unnecessarily increase the attorneys' fees and costs for the Defendants.  As such, the Defendants are concerned that the Plaintiff will make this lawsuit unnecessarily contentious and expensive in an attempt to cost the Defendants "staggering sums of money."

From the Plaintiff:  Mr. Kile's comments on August 7, 2012 were in the context of a Town Council meeting in which numerous local residents had gathered to learn the facts about what the Town was proposing.  Mooresville must use eminent domain to take Plaintiff's property, and so litigation is an unavoidable part of the course Mooresville was considering at the August 7 hearing.  As demonstrated by other recent utility takeover litigation, Mr. Kile explained that such litigation is hugely expensive and long-fought. In order that both the Town and these citizens could be fully advised on these issues, he advised the Town that Indiana-American would not consent to a hostile takeover of the Indiana-American Mooresville water utility and that the Town's actions would lead to litigation.  He specifically pointed out that a hostile takeover initiated by the City of Fort Wayne has been ongoing for years and reached the Indiana Supreme Court on two separate occasions.  The Defendants' suggestion that Indiana-American was threatening inappropriate or unnecessarily expensive litigation is flatly wrong, and without any

factual basis.  The comments simply put the Town Council on notice that:  (1) Indiana-American would not be a willing seller; (2) it would zealously protect its rights in litigation; (3) utility condemnation lawsuits are typically expensive, and long; and (4) the Town Council, as well as the public in attendance, should be aware of these significant consequences if the Town Council went forward with its hostile takeover.

Mr. Kile's comments do, however, illuminate a serious concern about the Defendants' failure to conduct proper document retention.  Due to Mr. Kile's comments, there could be no question on the part of the Town Council that litigation would result if the Town Council voted (as it did) to pursue the hostile takeover.

Because of the public outrage in response to the Town Council's "presentation" at the August 7, 2012 "hearing," and in light of the Town Council not allowing public comment at the August 10, 2012 meeting, the Defendants created an e-mail address and voice mailbox ostensibly to receive and consider public comments, albeit after the fact.  Indiana-American requested those e-mails and voicemails via a public record request.

In response, defense counsel, Mr. Unger, revealed that requested e-mails and voicemails were deleted.

Accordingly, weeks after being told that litigation would occur, and that the process the Town Council had provided was inadequate, the Town Council attempted to cover its failures, and deflect the public's outrage, by receiving public input via e-mails and voicemails.  The Town Council then deleted those (and likely other) electronic documents, e-mails and voicemails, no doubt because such information was not helpful to the Town Council.  In the face of considerable, forceful public disapproval of the Town Council's hostile water utility takeover, one is left to conclude that the Town Council did not care what the public wanted,  and thus it had pre-decided the issue, and did so due to personal motives.

As a result, there are serious spoliation of evidence issues.  There is a need to begin discovery promptly to investigate the Town Council's actions and to determine what all was destroyed, who destroyed it, when it was destroyed, why the Defendants did not put a litigation hold in place, and what, if any thing, can be recovered.

In order to discuss preservation of electronically stored discovery information and related topics, IAWC requested that the Defendants provide information regarding their:  (1) data retention policies; (2) the types of systems and databases used by the Defendants; and (3) the backup systems and recovery routines, including tape rotation and data destruction/overwrite policy.  In response, the Defendants' counsel advised that the Defendants were not "in a position, at this time, to discuss or exchange information on the three topics . . . requested."

Plaintiff believes the deletion of email and voicemail (and perhaps other documents) explains why the Defendants were unwilling to fully explore e-discovery and retention issues, and unwilling to provide the e-discovery/retention policy related information requested by Plaintiff.  This also explains why the Defendants are proposing that the parties not submit a Case

Management Plan and instead have all proceedings (including discovery) held in abeyance, pending the briefing and ruling on the motion for partial judgment on the pleadings.

   The Court should approve the Case Management Plan and discovery should proceed.

S/Bart A. Karwath
Nicholas K. Kile
Bart A. Karwath
Mark J. Crandley
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana  46204-3535
nick.kile@btlaw.com
bart.karwath@btlaw.com
mark.crandley@btlaw.com
Telephone:  (317) 236-1313
Facsimile:   (317) 231-7433

Attorneys for Plaintiff

S/Alan S. Townsend
Alan S. Townsend
Stephen C. Unger
J. Christopher Janak
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
atownsend@boselaw.com
sunger@boselaw.com
cjanak@boselaw.com
Telephone:  (317) 684-5000
Facsimile:   (317) 684-5173

Caren L. Pollack
Pollack Law Firm, P.C.
Three Meridian Plaza
10333 N. Meridian Street, Suite 111
Indianapolis, Indiana 46290
cpollack@pollacklawpc.com
Telephone:  (317) 660-4880
Facsimile:   (3170 660-4888

Attorneys for Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_____        PARTIES APPEARED IN PERSON/BY COUNSEL ON
                     FOR A PRETRIAL/STATUS CONFERENCE.

_____        APPROVED AS SUBMITTED.

_____        APPROVED AS AMENDED.

_____        APPROVED AS AMENDED PER SEPARATE ORDER.

_____        APPROVED, BUT ALL OF THE FOREGOING DEADLINES ARE
                     SHORTENED/LENGTHENED BY _____ MONTHS.

_____        APPROVED, BUT THE DEADLINES SET IN SECTION(S)
                     _____ OF THE PLAN IS/ARE
                     SHORTENED/LENGTHENED BY _____ MONTHS.

_____        THIS MATTER IS SET FOR TRIAL BY_____ ON
                     _____. FINAL PRETRIAL
                     CONFERENCE IS SCHEDULED FOR
                     _____ AT _____.M.,
                     ROOM _____.

_____        A SETTLEMENT/STATUS CONFERENCE IS SET IN THIS CASE
                     FOR _____ AT _____.M.  COUNSEL SHALL
                     APPEAR:

                     _____ IN PERSON IN ROOM _____; OR

                     _____ BY TELEPHONE, WITH COUNSEL FOR
                     INITIATING THE CALL TO ALL OTHER PARTIES AND ADDING
                     THE  COURT JUDGE AT (\_\_\_\_) _____; OR

                     _____ BY TELEPHONE, WITH COUNSEL CALLING THE
                     JUDGE'S STAFF AT (\_\_\_\_) _____; OR

_____        DISPOSITIVE MOTIONS SHALL BE FILED NO LATER THAN

                     _____.

Upon approval, this Plan constitutes an Order of the Court.  Failure to comply with an Order of the Court may result in sanctions for contempt, or as provided under Rule 16(f), to and including dismissal or default.

**Approved and So Ordered.**


_____           _____
Date                                                            U. S. District Court
                                                                    Southern District of Indiana