UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA-AMERICAN WATER COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:12-cv-01493-TWP-DML ) |
| TOWN OF MOORESVILLE, THE MOORESVILLE TOWN COUNCIL, GEORGE WATKINS, JEFFREY M. COOK, ANTHONY LANGLEY, VIRGINIA PERRY, and MARK MATHIS, in their individual and official capacities, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**AMENDED ENTRY ON PENDING MOTIONS**

Plaintiff Indiana-American Water Company, Inc.'s ("IAWC"), operates a water utility company in Mooresville, Indiana and it filed this action seeking declaratory relief and damages against Defendants the Town of Mooresville ("Mooresville"), the Mooresville Town Council ("Town Council"), and Town Council members George Watkins, Jeffrey M. Cook, Anthony Langley ("Mr. Langley"), Virginia Perry, and Mark Mathis (collectively, "Defendants"). IAWC alleges the Defendants violated due process and Indiana Access to Public Records Act in their quest to create a new municipal utility. This matter is before the Court on Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 14) and Motion for Sanctions and Attorney Certification (Dkt. 56), and Plaintiff's Motion to Remand to Indiana State Court (Dkt. 26). The Court on its own, set the motions for oral arguments which were held on July 26, 2013. For the reasons set forth below, IAWC's Motion to Remand (Dkt. 26) is **GRANTED in part** and **DENIED in part**; Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 14) is also

**GRANTED in part** and **DENIED in part**; and Defendants' Motion for Sanctions (Dkt. 56) is **DENIED**.

## I. BACKGROUND

Since 2000, IAWC has owned and operated the water utility that provides service in and around the Town of Mooresville. On July 23, 2012, Mooresville provided notice to IAWC and the public that it would hold a public hearing to receive public comment on a proposed ordinance "declaring that the public convenience and necessity require the establishment of a municipally owned water utility and for the construction or acquisition of water utility assets and facilities." The notice specifically stated that the hearing would occur at the August 7, 2012 Town Council meeting, but did not provide a certain time or location. In response, IAWC contacted Mooresville for additional information, but was told only that it could give a thirty minute presentation and the time of the hearing was confirmed. IAWC additionally made public access requests for several documents, including the text of the proposed ordinance, the meeting agenda, minutes and studies—documents that would shed light on the exact nature of the public hearing. The documents were not produced before the August 7, 2012 meeting; instead Mooresville's attorney sent a letter stating the request was being reviewed.

At the Town Council meeting, public comment was received and IAWC was allowed to give "a general presentation" because, as IAWC contends, it did not know any specifics about the proposed ordinance or how to respond. Thereafter, Mr. Langley, a Town Council member, gave a presentation which concluded with his opinion that Mooresville should acquire IAWC's utility services. Mr. Langley also stated that he had already decided his vote was in favor of taking over the utility. IAWC was not allowed rebuttal.

The day after the meeting, IAWC received the proposed ordinance and a copy of Mr. Langley's presentation. Meeting minutes, agendas, and notices from 2012 were produced the following day. Then, on August 10, 2012, the Town Council held a special meeting, suspended the rules to allow for voting on the first reading and adopted the ordinance without further public comment. Mooresville contends that between July 21, 2012 and November 12, 2012, it complied with each of IAWC's public access requests.

On September 24, 2012, after attempts to arrange an inspection of the IAWC physical plant had failed, Mooresville sent IAWC a letter informing it that Mooresville was exercising its state statutory right to inspect the IAWC facility. Mooresville also requested access to various IAWC business documents and other property. In response to what it characterizes as a threatened unlawful search and seizure, IAWC filed the instant action in state court on October 4, 2012 alleging four counts: Count I-violation of due process, Count II-failure to give proper notice under Ind. Code § 8-1-1.5-2-10, Count III-unlawful search and seizure, and Count IV-violation of the Indiana Access to Public Records Act. Because the Complaint alleges violations of IAWC's civil rights under the Constitution, claims under 42 U.S.C. § 1983 ("§ 1983"), Mooresville removed the action to federal court. It subsequently filed a Motion for Judgment on the Pleadings. In response, and 80 days after removal, IAWC filed a Motion to Remand.

Also relevant, on December 24, 2012, Mooresville adopted a second ordinance that authorized the acquisition of the IAWC operation by eminent domain, if necessary. This occurred after Mooresville's offer to buy IAWC's interest was rejected by IAWC. On December 27, 2012, Mooresville initiated an eminent domain lawsuit in state court. On January 15, 2013, IAWC filed a Motion to Stay in the eminent domain proceeding pending the outcome of this action.

The attorneys in this action met on March 25, 2013. At the meeting, Mooresville requested, and IAWC refused to, dismiss this action, any count of this action, and the action specifically against the Town Council members in their individual capacities. Mooresville then filed for summary judgment in its state court eminent domain suit on March 26, 2013, and on March 28, 2013, filed a Motion for Sanctions in this Court against IAWC. Additional facts are added below as needed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. Rule 12(c) motions are reviewed under the same standard as a motion to dismiss under 12(b)(6). *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The facts in the complaint are viewed in the light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III. DISCUSSION

Defendants assert that the Court should enter judgment in Mooresville's favor on Counts I, II, and III in their entirety as a matter of law and deny the request for attorneys' fees and civil

penalties in Count IV as a matter of law. Additionally, Defendants contend the individual members of the Town Council – George Watkins, Jeffrey M. Cook, Anthony Langley, Virginia Perry, and Mark Mathis – are immune from suit in their individual capacities and should be dismissed from the case. In response, IAWC asks this Court to remand the case back to state court because the Defendants' claim of federal jurisdiction over IAWC's due process count is barred by *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In addition, IAWC argues the Court should abstain from hearing this matter under the *Burford* abstention doctrine (*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)) because the two federal issues raised in the Complaint (the due process claim and a Fourth Amendment violation) are bound up with numerous important issues of Indiana state law. The Court will address each contention below.

**A.   Due Process Claim**

IAWC's due process claim is brought under 42 U.S.C. § 1983. IAWC alleges the Defendants, acting under color of state law at the August 7, 2012 public hearing, violated IAWC's Fourteenth Amendment right to due process before depriving it of its property interest in the IAWC water utility operation and services. *Williamson County* is an exception to the general rule that a § 1983 claim does not require exhaustion of administrative remedies before bringing an action. The Seventh Circuit describes *Williamson County* as having two requirements: "(1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The requirements are applied broadly. "[O]ur case law explains that the *Williamson County* exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same

facts as a taking claim." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 960 (7th Cir. 2004). However, "bona fide" § 1983 claims are not subject to *Williamson County*, and are subject to the general rule that does not require parties to exhaust state law remedies. Thus, an important inquiry in this case is whether IAWC's due process claim is merely "labeled" as a due process claim or is a "bona fide non-takings claim." *See Peterson v. Town of Fishers*, No. 1:08-cv-884-RLY-TAB, 2008 WL 4410380, at *4 (S.D. Ind. Sept. 24, 2008). To make this determination, the Seventh Circuit has looked at the language in the complaint and relief sought. *See Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 932 (7th Cir. 2005).

Mooresville contends that proper application of *Williamson County* in this case should result in a dismissal of IAWC's claims outright. In contrast, IAWC contends that proper application of *Williamson County* is to remand the case to the original state court to allow IAWC to exhaust its state remedies. Alternatively, IAWC contends that *Williamson County* does not apply to its due process claims because they are not "takings claims in disguise."

To begin its analysis, the Court will first determine whether *Williamson County* applies. IAWC has not brought a takings claim; in fact, no taking has yet occurred. IAWC's complaint alleges that IAWC has a property interest in its Mooresville utility operation and the accompanying service territory. Further, the enacted ordinance would deprive IAWC of that property and due process requires that IAWC have a meaningful opportunity to be heard before the Town Council before being deprived of its property interest. Thus, IAWC alleges, its due process rights were violated when it was not given fair warning of the August 7, 2012 meeting and the issues to be addressed. Its claim is directed at the "procedures used to enact the ordinances that made these declarations." Dkt. 27 at 14. Mooresville argues that IAWC's

procedural due process claim is a disguised attack on Mooresville's condemnation or eminent domain proceedings and, therefore, cannot be a bona fide § 1983 claim under these facts.

"In order to maintain successfully a procedural due process claim, the plaintiffs must show that they were deprived of a constitutionally protected interest in life, liberty, or property." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). Procedural due process requires the "government to follow reasonable procedures for minimizing mistaken deprivations of liberty. In determining what is reasonable, 'the court must consider the weight of the interest at stake, the risk of error, and the costs of additional process.'" *Atkins v. City of Chi.*, 631 F.3d 823, 827 (7th Cir. 2011) (quoting *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006)). Fundamentally, due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

In this case, the takings issue cannot be separated from the threatened deprivation of property without due process. IAWC might possess a bona fide § 1983 claim not subject to the ripeness of doctrine of *Williamson County*, but deciding that claim at this juncture requires interfering with the state condemnation and/or eminent domain proceedings, as well as interpreting state laws. Additionally, regardless of the process given at the time Mooresville and the Town Council adopted the ordinance to take over IAWC's utility, IAWC has the opportunity to make use of state law avenues to challenge Mooresville's planned acquisition. It would be premature to, at this stage, interfere with the state law procedures.

Therefore, although the Court does not find definitively that *Williamson County* applies, it will exercise its discretion to abstain under *Burford*. Abstention recognizes the judiciary's interest in the "avoidance of needless friction with state policies." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). *Burford* abstention is appropriate: "(1) when there are

'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

The Court is faced with the first category of cases in which *Burford* abstention would be appropriate. There is no doubt that Indiana has a strong interest in the interpretation and application of its condemnation and eminent domain laws. *See La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959) ("A determination of the nature and extent of delegation of the power of eminent domain concerns the apportionment of governmental powers between City and State. The issues normally turn on legislation with much local variation interpreted in local settings."). The Supreme Court has stated, "[t]he considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court." *Id.* Although the instant case is not an eminent domain proceeding removed to federal court, the same reasoning applies here where the federal claim is inseparable from the condemnation/eminent domain issues.

Furthermore, the Seventh Circuit has instructed that "even in cases involving state land use issues, a district court must not decline jurisdiction where its exercise 'would . . . not require the District Court to guess at the resolution of uncertain and difficult issues of state law." *Int'l Coll. of Surgeons v. City of Chi.*, 153 F.3d 356, 362 (7th Cir. 1998). Here, even assuming that

IAWC has a bona fide and ripe § 1983 procedural due process claim,[1] the merits of that claim are in large part determinative based on the application of Ind. Code § 8-1.5-2-10.[2] The parties disagree over whether section 8-1.5-2-10 applies in this instance, and there is very little Indiana law governing the issue. In 1940, the Indiana Supreme Court decided *Montgomery Light & Power Co. v. Town of Linden*, 29 N.E.2d 209 (1940). Mooresville relies on this case to interpret section 8-1.5-2-10, while IAWC argues that *Montgomery* interprets and applies a provision "that no longer exists and was itself a victim of the 1982 revisions to the utility condemnation laws." Dkt. 27 at 25. In addition to the 1982 revisions, IAWC also makes note of the 2009 legislative revisions of utility statutes that have bearing on this case. Additionally, Mooresville relies on House Enrolled Act 1307, which was signed into law in May 2013. Although the revision enacted by H.E. 1307 does not apply in this case, Mooresville argues the changes to the preexisting law, Ind. Code § 8-1.5-2-7, make clear that it was not required to give IAWC notice and a hearing. IAWC disputes Mooresville's interpretation. This discussion and dispute persuades the Court that it is proper for the state courts to interpret the scope of the statutes at issue in this case, especially considering the recent changes in the law. *See Thibodaux*, 360 U.S. 29 (in eminent domain context, finding district court's decision to abstain was appropriate where exercise of jurisdiction would require the court to "make a dubious and tentative forecast" of state law); *cf. Int'l Coll. of Surgeons*, 153 F.3d at 363 (finding abstention not appropriate under

---

[1] Mooresville contends that IAWC does not possess a personal property interest that would support a claim for due process. First, Mooresville argues that IAWC does not have a property interest in its service territory, which IAWC has characterized as an area free and open to competition. *See* Dkt. 15 at 13. The Court finds it need not take up this specific issue because Seventh Circuit law suggests that IAWC at least possesses a property interest in its tangible real and personal property. *See River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994) (noting in the zoning context that plaintiff "surely had a property interest in the land, which it owned in fee simple, and is therefore entitled to contend that the City's regulation of that land deprived it of property without due process").

[2] Whether proper notice was given under this statute was brought by IAWC as an independent issue under Count II.

first prong of *Burford* where the application of the Takings Clause of the Illinois Constitution "to this case is clear").

Dismissal under the *Burford* doctrine is an extraordinary remedy left to the discretion of a district court sitting in equity. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726–27 (1996). "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Id.* at 728 (internal quotation and citation omitted). Although there is a strong federal interest in ensuring due process is provided, this interest is not so strong in this case—where there has yet to be any deprivation of property—that the Court should retain jurisdiction. After thoughtful consideration, the Court will abstain under the first prong of *Burford*. Given the remaining state law claims at issue that should be decided by the state court, the Court will dismiss the § 1983 due process claim without prejudice. Before remanding the action, though, the Court must first address the remaining federal claim.

**B.     Search and Seizure**

IAWC asserts that Mooresville's letter of intent to enter and review IAWC's operation amounts to an unlawful search and seizure in violation of the Fourth Amendment. IAWC requests injunctive relief or declaratory judgment in Count III. IAWC concedes that Mooresville has not yet made an entry, search, or seizure of IAWC property. Mooresville argues that the Fourth Amendment does not protect against threatened or attempted searches and seizures. Furthermore, it argues that Ind. Code § 32-24-1-3(b) permits Mooresville to inspect IAWC property and facilities before acquiring the utility.

As noted in *Doe v. Prosecutor, Marion Cnty.*, 566 F. Supp. 2d 862, 875 (S.D. Ind. 2008), constitutionally protected interests may be subject to pre-enforcement challenges. Traditional ripeness factors apply in such a challenge: "the magnitude of the threat of enforcement and the nature of the harm that would be caused by enforcement." *Id.* Supreme Court precedent indicates that a threat must be concrete to succeed on a pre-enforcement challenge. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 504 n.22 (1982) (noting that "in a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened" and a strong showing must be made).

IAWC asserts three grounds for rejecting Mooresville's motion for judgment on the pleadings on the IAWC's Fourth Amendment claim. First, Mooresville's letter "unequivocally invoked a claimed right to come onto [IAWC] property and stated it would be doing so in short order." Dkt. 27 at 28. IAWC argues that it was not required to sit idly by and allow Mooresville to enter its property. Second, IAWC argues that because the ordinance adopted by Mooresville is invalid, there was no authority under Ind. Code § 32-24-1-3(b) to conduct an inspection. Third, IAWC argues Ind. Code § 32-24-1-3(b) does not "compel the target of a hostile takeover to submit to any action other than this [property] survey. The Town therefore cannot compel the production of documents through this statute." Dkt. 27 at 29. At oral argument, IAWC further argued that even though Mooresville had abandoned the procedures under Ind. Code § 32-24-1-3(b) and had filed an eminent domain action, there is still a threat that Mooresville would revert back to the condemnation proceeding and enter IAWC property. Finally, IAWC argued at oral argument that there is a residual ill effect resulting from the threat; in particular, that IAWC is being prejudiced in the eminent domain proceeding.

The Court finds that IAWC has not made a concrete showing that there is a serious threat to its Fourth Amendment rights. Mooresville has not persisted in its stated intention under Ind. Code § 32-24-1-3(b) to enter and inspect IAWC property. This is not like in *Doe*, in which the court found "a credible, concrete prospect of enforcement." Further, given that Ind. Code § 32-24-1-3(b)(1) states that before proceeding to condemnation, a person "may enter upon any land to examine and survey the property sought to be acquired"; the Court is not convinced that there is the threat of a constitutional violation, let alone a serious threat. The letter from Mooresville simply does not rise to the level of a serious threat that can be remedied by injunctive relief or declaratory judgment. Therefore, the Court must dismiss this claim without prejudice as unripe.

**C.     Legislative Immunity**

IAWC has filed its § 1983 suit against members of the Mooresville Town Council in their individual capacities. Mooresville contends that the members of the Town Council are entitled to legislative immunity. The doctrine of legislative immunity allows local officials to be "absolutely immune from suit under Section 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). The act of voting is "quintessentially legislative." *Id.* IAWC argues that the legislative action here was directed at one citizen, IAWC, a decision for which immunity would not apply. However, accepting IAWC's position in this case would require the Court to essentially find that local town governments cannot pass ordinances within the statutory procedures of Indiana utility acquisitions, which expressly reference the passage of ordinances in this context. Moreover, it is not the intent of an act but the nature of the act that matters. *See id.* at 54. Therefore, the Council members were acting in a legislative capacity when they passed the ordinance at issue, and they are entitled to absolute legislative immunity.

The claims against the Town Council members in their individual capacities are dismissed with prejudice.

D.       **Supplemental Jurisdiction**

The Court has found that the two federal claims in this case, Count I and Count III, should be dismissed without prejudice. The remaining claims, Counts II and IV, are state statutory claims. Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over all claims, such as state law claims lacking diversity, "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, district courts may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Seventh Circuit has held that "[n]ormally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (internal quotation marks omitted).  There are three exceptions to the rule: "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Id.* at 514–15 (internal quotation marks omitted).

Here, it is clear that supplemental jurisdiction should be relinquished.  As discussed earlier, this case includes substantial and unclear questions of state law.  Under such circumstances, remand to the original state court to resolve the remaining state law claims is appropriate.

### E.     Motion for Sanctions

Finally, in addition to its Motion for Partial Judgment on the Pleadings, Mooresville has requested sanctions against IAWC under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11. Mooresville has also requested attorneys' fees under 42 U.S.C. § 1988. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "The purpose of § 1927 'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'" *Riddle & Assoc., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (quoting *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Kapco Mfg. Co.*, 886 F.2d at 1491. Rule 11 provides sanctions for various reasons, including presenting the court with pleadings with "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Finally, 42 U.S.C. § 1988 awards attorneys' fees to prevailing parties in an action under § 1983.

As an initial matter, Mooresville is not entitled to fees under § 1983, as it cannot be characterized as a prevailing party; nor does the Court deem IAWC's suit "frivolous." *See Roger Whitmore's Auto Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 675 (7th Cir. 2005). Turning to the motion under Rule 11 and 28 U.S.C. § 1927, the Court finds that sanctions are inappropriate. First, the Court has not adopted the full position of either party in its ruling in this Entry. It has not found that IAWC's claims have no plausible legal basis, as Mooresville suggests. Second, despite Mr. Kile's impassioned statements at the Town Council meeting on August 7, 2012,

while his words may have displayed frustration, there is no showing that Mr. Kile acted in bad faith. Third, Mooresville noted approximately ten acts it deems sufficient to show IAWC has acted with an "improper purpose" under Rule 11. Given the apparent contentiousness of both sides in this litigation, the Court does not find a basis for sanctioning IAWC under Rule 11. Simply put, this is a complicated and aggressively-litigated case. Annoyances and disagreements are not grounds for sanctions.

## IV. CONCLUSION

For the reasons set forth above, the Court makes the following rulings: Plaintiff's Motion to Remand (Dkt. 26) is **GRANTED in part** and **DENIED in part**; Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 14) is also **GRANTED in part** and **DENIED in part**; Defendants' Motion for Sanctions (Dkt. 56) is **DENIED**. Plaintiff's claims under 42 U.S.C. § 1983, Counts I and III, are **DISMISSED without prejudice**, however the claims against the Town Council members in their individual capacities are **DISMISSED with prejudice**. Plaintiff's remaining state law claims, Counts II and IV, are **REMANDED** to the Morgan County Circuit Court. Defendants' Motion for Protective Order (Dkt. 41), Plaintiff's Motion to Compel Discovery (Dkt. 47), and Defendants Motion for Phone Status Conference (Dkt. 95) are **DENIED** as **MOOT** and may be addressed in state court if appropriate.

SO ORDERED.

Date: 09/25/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Guna Kirhnere
BARNES & THORNBURG LLP
guna.rogers@btlaw.com

Mark Jason Crandley
BARNES & THORNBURG LLP
mcrandley@btlaw.com

Meredith Thornburgh White
BARNES & THORNBURG LLP
mwhite@btlaw.com

Nicholas Kevin Kile
BARNES & THORNBURG LLP
nkile@btlaw.com

Alan S. Townsend
BOSE MCKINNEY & EVANS, LLP
atownsend@boselaw.com

John Christopher Janak
BOSE MCKINNEY & EVANS, LLP
jjanak@boselaw.com

Jonathan W. Hughes
BOSE MCKINNEY & EVANS, LLP
jhughes@boselaw.com

Stephen C. Unger
BOSE MCKINNEY & EVANS, LLP
sunger@boselaw.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com